Howell, J.
As the constitutional questions raised in this proceeding have, in our opinion, been decided in the case of the Draining Company, 11 An. 370, we think it necessary to consider only the following grounds of opposition herein as argued before us :
First — That some of the lands, upon which this assessment is levied", were.drained at their cost under the provisions of act No. 49, of 1839, and are, by the thirteenth section thereof, specially and forever exempted from any further assessment for draining.
Second — That by act 165 of 1858, the assessments for draining any one section or district shall not exceed three hundred and fifty thousand dollars, which sum has already been nearly exhausted, and the present assessment is for $450,000 additional.
Third — That the money can not be collected in advance of the completion of the work.
I. Section 13 of the act invoked reads : “ That whenever any section c>f land shall have been drained and cleared by said draining company, it shall abandon the same to the municipality or municipalities in which the said section may be situated; and whereas, the said draining will have been effected entirely at the expense of the proprietors of said land, and will greatly contribute to the salubrity and drainage of the front part of the said city, the said municipality or municipalities shall thereafter maintain the leveés and ditches made by said draining company, and the machinery and other works erected by the same on the said sections, in good repair and in efficient condition, without ever laying an extra tax on the land so drained. If any of the said sections should extend into two municipalities, the steam engine and other machinery erected-thereon by the said draining company, shall be kept in repair and operation by the municipality within the limits of which it is established; but the other municipality shall contribute to the expenses thereby occasioned, in the same proportion, which the extent of the portion of said section lying within the limits, bears to the extent of the portion of the said'section embraced within the ‘boundaries of the municipality wherein the said engine or other machinery and building have been constructed, but each municipality shall maintain the ditches and levees made by said company within its own limits.”
It is contended by the opponents that this is a contract between them and the State, by which their lands, within a certain section drained by the said draining company, are exempted from the assessment now under consideration. We can not concur in this view, and *22 we think the litigation in the case cited in 11 An. clearly shows that the draining of opponents’ lands by the then draining company was not done under a contract between the State and the opponents, or their authors. We are unable, moreover, to find in the above section the elements of a contract. The State, in providing for the draining of said lands, was exercising one of the highest powers of its sovereignty, without requiring the consent of the owners, but rather enforcing it in despite of their opinions and objections, and directed that when completed, the burden of maintaining and preserving the benefits thereof should be imposed upon the municipal government and not upon the owners of the lands most directly benefited. This was but justice. But there was nothing like a mutual agreement that, if the owners would pay the company for draining their lands, the said lands should never again be required to contribute to any draining that might be or become necessary.
Those lands having thus been drained and made valuable, were thereafter like the lands in the front and higher part of the city, and in common with them liable for maintaining the established drains and constructing any that might be elsewhere needed, for the common benefit. And this is what is now being sought by these proceedings; all ihe lands within the first draining dristrict, as it now exists, are uniformly assessed to effect the draining of all the low lands within its limits. It is not an extra tax within the contemplation of the said thirteenth section, which made it the duty of the municipality, in its corporate capacity, to maintain the levees and ditches made, and the machinery and other works erected by the draining company on the particular section, without ever laying an extra tax on the lands so drained. That is, the lands so drained were not to have an extra tax levied on them to maintain those works; but the said work, etc., were to be maintained out of the funds arising from the general tax imposed throughout the municipality — maintained at the public expense and not at the expense, or the increased, additional expense of the lands so drained. This we think is the fair, legitimate construction and purpose of the section under consideration, and renders it unnecessary to decide whether the legislature sought by it, and had the power to limit or restrict the legislative action and authority of future legislatures.
II. We do not consider the second objection well founded. The act of 1858 did limit the assessment in each of the three districts to three hundred and fifty thousand dollars; but the supplementary act No. 191, of 1859, authorized each of the three boards of commissioners to issue bonds to the amount of three hundred and fifty thousand dollars, and to levy an assessment to pay the interest and principal *23 thereof, the amount of which assessment, demandable yearly, should not exceed in the aggregate more than one tentli of such assessment. The act of 1861, No. 57, provided, as its title indicates, for the collection of the assessment for draining under the act of 1858, and the supplementary act of 1859, and it seems that the present proceedings were instituted in accordance with the provisions of this act of 1861. It is stated by a witness in this case, who was a member of one of the boards of commissioners created by the act of 1858, that the boards thought they could go to the extent of seven hundred thousand dollars each. Whether they are correct or not in such opinion, the legis-' lature of 1871, in act No. 30, has legalized the assessments made by the said three boards of commissioners under the said acts of 1858 and' 1859, and other supplementary and amendatory acts, and authorized and directed the Board of Administrators of New Orleans to collect the balance due on said assessments, which the said administrators are seeking to do in this case, and are asking for the homologation of the assessment roll showing the assessments due by the persons and property assessed, in the First Draining District within the parish of Orleans, from the second to the tenth annual installment inclusive.
III. The judge below sustained the third objection, and held that the assessment can not be collected until the drainage is completed, •on the theory that the State or city, acting under authority from the State is but the negotiorum gestor or special agent of the parties for whom the work is to be done, and is entitled only to reimbursement for all disbursements actually made. In -this there is error. As we have already remarked, the State, in ordering the draining, is exercising sovereign power, and can, of course, direct or authorize the work to be done in such way and compensation, made on such terms as in its discretion may seem best, restrained only by the fundamental principles upon which the government is to be conducted, and we find nothing in them inhibiting the State from having the means provided for such a work, in the way it is done in the present system of drainage in the city of Mew Orleans. On this question we see no room for judicial interference with the discretion of the State, and we think the existing laws clearly authorize the collection sought herein to be enforced.
There are other grounds of opposition in the record, but they have not been urged before us, and we find nothing in them demanding attention. The proceeding, as to the property belonging to the succession of John Davidson, not being probate in its character and •object, is not in conflict with the constitution, giving exclusive probate jurisdiction to the Second District Court.
It is therefore ordered that the judgment appealed from be reversed, *24 and that the oppositions herein be dismissed at the costs of the opponents respectively; and it is further ordered that the assessment roll herein, except that portion designated as “Book No. 2, B,’’ on said roll, be and is hereby approved and homologated, and this approval and homologation shall operate as a judgment against the property described as assessed in said roll, and also against the owner or owners thereof, with ten per cent, in addition to the amount assessed, to pay costs and counsel fees.